UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jimmy Morton,<br><br>    Plaintiff,<br><br>v.<br><br>Park Christian School, Christopher Nellermoe, Joshua Lee, and Timothy Kerr,<br><br>    Defendants. | Case No. 0:19-cv-03134 (ECT/LIB)<br><br><br><br>**JOINT RULE 26(f) REPORT** |

The Counsel identified below participated in the meeting required by Fed. R. Civ. P. 26(f) and the Local Rules, on March 9 and 16 2020, and prepared the following report.

The initial pretrial conference required under Fed. R. Civ. P. 16 and LR 16.2 was scheduled for March 24, 2020, before the United States Magistrate Judge Leo I. Brisbois. The conference was recently cancelled. The parties do not request that the pretrial be held by telephone.

**(a)    Description of the Case**

1. Concise factual summary of Plaintiff's claims/defenses.

    Plaintiff Jimmy Morton brings this action against Defendant Park Christian School ("PCS") and its current and former employees, Defendants Christopher Nellermoe ("Principal Nellermoe), Joshua Lee ("Coach Lee), and Timothy Kerr ("Coach Kerr"), for their negligence and other tortious conduct which resulted in severe injuries to Morton.

    In the spring of 2015, Morton, an eighteen-year-old from Jackson, Mississippi, moved across the country to attend PCS, a private evangelical school in Moorhead, Minnesota. Morton, talented at both basketball and track, was attracted to PCS because of its excellent basketball program. PCS had high hopes for its varsity boys' basketball team's (the "PCS Team") upcoming season, which soon included Morton, and believed the boys could make it to the state tournament.

Morton soon met PCS Head Basketball Coach Joshua Lee ("Coach Lee") and was invited to join PCS's summer basketball program. Coach Lee gave Morton a PCS school uniform and put him on the roster. Coach Lee set a rigorous summer schedule, with early morning practice five days a week at the PCS gym, followed by an hour of weight-lifting presided over by PCS personnel. Morton attended every practice and did everything his coaches asked of him. On the weekends, Morton and his PCS teammates scrimmaged other high school teams. The PCS Team also played in a high school league on Tuesday nights, which was coached by Coach Lee.

Shortly after joining the PCS team, Morton learned that they were expected to participate in a high school boys basketball tournament in Wisconsin Dells in late June, known as the High School Boys Basketball Shoot Out in the Dells (the "High School Shootout"). Morton was told PCS would use school vans to transport the team, which Morton explained to his mother, who was still in Mississippi.

On the morning of June 23, 2015, Morton and seven other teammates arrived at the PCS parking lot to depart for Wisconsin. Contrary to what Coach Lee had told the team, there was no school van. Principal Nellermoe had refused Coach Lee's request for school transportation, a violation of PCS policy, which mandates that, "High school students and coaches will travel to and from the game by school transportation as provided."

Instead of canceling the trip, the coaches decided to drive their own vehicles. Coach Kerr planned to drive his vehicle and transport four players. But Coach Lee refused to transport the other players even though there were four open seats in his car. Consequently, the coaches decided that eighteen-year-old Zach Kvalvog would drive his fourteen-year-old brother Connor, Morton, and seventeen-year-old Mark Schwandt. This was a clear violation of two PCS school policies. First, players are not allowed to use non-school transportation to travel to out of town events without the advance written permission of "their parent/guardian, coach, Activities Director and Principal." PCS failed to obtain such advance written permission. Second, asking Zach to drive violated PCS policy which strictly forbids players from driving their own vehicles to out-of-town events, a policy intended to keep players safe.

Before leaving the school parking lot, the coaches told Zach to stay together on the road. The PCS Team departed in a three-vehicle caravan, led by Coach Kerr. Coach Lee was second in line and drove alone. Zach, transporting Connor, Schwandt, and Morton, trailed behind. Just before the caravan left Moorhead, Coach Lee called Zach on his cell phone and again told him to stay together on the trip. Traveling eastbound on I-94, Coaches Kerr and Lee proceeded to drive an

2

average of more than 80 miles per hour, far in excess of the posted speed limit of 55 and 70 miles per hour.

Less than an hour into the trip, Coach Kerr passed a semi and Coach Lee also followed. But when Zach attempted to pass, the semi encroached into Zach's lane. Zach veered to the left to avoid a crash, but as a teenage driver with only two years' experience, and traveling at 80 miles per hour, he lost control of the truck, which spiraled violently out of control, rolling over and landing in the westbound lane of I-94. Zach was killed. Connor and Morton were both thrown from the truck, landing in the westbound lane of the interstate. Schwandt was also injured, but survived. Connor died on the highway. Morton skidded across the pavement for approximately 120 feet, which ripped most of the skin off his upper back, down to the bone in some areas. Morton also injured his head, lacerated his scalp, and skin was torn off his face, head and right side. He suffered a traumatic brain injury and is permanently disfigured.

The coaches never went to the players' aid. Coach Kerr continued to drive for several miles, passing six emergency turn-arounds, before returning to the crash site. Coach Lee was trained in first aid and had a PCS first aid kit with him. But Coach Lee did nothing to help his dead, dying or injured players. Instead, he spent the entire time on his phone, mostly with school officials. Coach Lee was more concerned with protecting himself and the school from liability. Within a couple hours of the horrific crash, a pastor from one of PCS's sponsoring churches, emailed his parishioners attempting to insulate PCS from liability: "The boys were heading to participate in a basketball tournament in Wisconsin when the accident occurred. Although the trip was not sponsored by Park Christian, some on the trip, including the Kvalvog boys were students at Park."

PCS owed both a duty of care and a fiduciary duty to Morton, which it violated in every conceivable way, including violating its own policies intended to prevent this very outcome. Morton's injuries derailed his prospective athletic career. Before the crash, Morton jumped seven feet, two and quarter inches in the high jump, which is comparable to recent Olympic medal recipients. Several Division One colleges were recruiting him after his junior year. He was also an excellent basketball player, with a promising future in college basketball and beyond. The egregious conduct of PCS changed everything for Morton. Morton continues to suffer from the traumatic brain injury and his other injuries. The crash has changed his brain functioning and the course of his life.

Morton has asserted several claims for negligence, negligence per se, and breach of fiduciary duty.

2. Concise factual summary of Defendants' claims/defenses.

   <u>Defendants Park Christian School, Christopher Nellermoe and Joshua Lee</u>
   This case involves a tragic motor vehicle accident that occurred on June 23, 2015 near Dalton, Minnesota.  Plaintiff Jimmy Morton was part of a group of high school aged athletes traveling from the parking lot of Park Christian School in Moorhead, Minnesota, to attend a voluntary summertime basketball tournament in Wisconsin. Plaintiff, age 18, was a passenger in a pickup being driven by his 18 year-old teammate Zachary Kvalvog when a semi in the adjacent lane of eastbound traffic of I-94 carelessly swerved into the lane space of the Kvalvog vehicle causing Zachary to lose control of his pickup in the center median.  Zachary Kvalvog and his brother Connor died as a result of the rollover accident.  Plaintiff sustained injuries the nature and extent of which are disputed.

   On the date of the accident, Park Christian School was not in session.  The PCS boys' varsity basketball season had ended about three months earlier.  Plaintiff was not enrolled as a student at PCS.  Josh Lee, a teacher at PCS during the academic year and basketball coach during the boys' varsity basketball season, was not under contract with the school. Lee was making the trip to Wisconsin with plans to coach the team in the tournament as an unpaid volunteer.  Allegations that Josh Lee offered or promised the players participating in the tournament that they would receive transportation from the school are untrue as are allegations that Josh Lee was asked and refused to transport players in his personal vehicle.  Defendants Park Christian School, Josh Lee and Christopher Nellermoe deny they were negligent.

   <u>Defendant Timothy Kerr</u>
   On June 23, 2015, a very unfortunate accident involving a motor vehicle and an unknown semi-tractor-trailer occurred near Dalton, Minnesota.  Plaintiff Jimmy Morton was part of a group of high school aged athletes traveling from the parking lot of Park Christian School in Moorhead, Minnesota, to attend a voluntary summertime basketball tournament in the Wisconsin Dells. Plaintiff, age 18, was a passenger in a pickup being driven by his 18 year-old teammate Zachary Kvalvog when a semi in the adjacent lane of eastbound traffic of I-94 carelessly swerved into the lane space of the Kvalvog vehicle causing Zachary to lose control of his pickup in the center median.  Zachary Kvalvog and his brother Connor died as a result of the rollover accident.  Plaintiff sustained injuries the nature and extent of which are disputed.

    On the date of the accident, Defendant Timothy Kerr was driving his wife, their two children (Jordan Kerr and Ryan Kerr), as well as Tyrell Rodriguez and Seth Heinen. Defendant Kerr was driving the first vehicle to leave the PCS School to attend the tournament. Defendant Kerr did not witness the accident that is the subject of this litigation. At the time of the accident, Park Christian was not in session. Plaintiff was not enrolled as a student at PCS. Defendant Kerr was not under contract with PCS at the time and was not the basketball coach for PCS at the time of the incident. After the accident, Defendant Josh Lee called Defendant Kerr to tell him about the accident and Defendant Lee asked Defendant Kerr to call 911. Defendant Kerr called 911 to report the accident and then got off on the next highway exit and turned around to go back to the scene of the accident. Defendant Kerr denies any and all negligence in this matter and disputes the nature and extent of the alleged injuries and damages claimed by Plaintiff.

3. Statement of jurisdiction (including statutory citations).

   This Court has jurisdiction under 28 U.S.C. § 1332(a)(1), as the parties are completely diverse and the amount in controversy exceeds $75,000.

4. Summary of factual stipulations or agreements.

   None at this time.

5. Statement of whether a jury trial has been timely demanded by any party.

   Plaintiff demanded a jury trial in his complaint and Defendants demanded a jury trial in their answers.

6. The parties **do not agree** to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota.

**(b)** **Pleadings**

    All process has been served. Defendants may bring a third-party complaint.

**(c)** **Fact Discovery**

The Parties recommend that the Court establish the following fact discovery deadlines and limitations:

1. The parties must make their initial disclosures required by Rule 26(a)(1) on or before and will exchange copies of documents on or before **April 13, 2020**.

5

2. The parties must complete an any physical or mental examinations under Fed. R. Civ. P. 35 by January 15, 2021.

3. Fact discovery procedures must be commenced in time to be completed on or before **January 15, 2021.**

4. The Parties propose that the Court limit the use and number of discovery procedures as follows:

    A. **25** interrogatories to each party, consistent with the Federal Rules of Civil Procedure;
    B. The parties agree to limit themselves to **50** document requests to each party.
    C. The parties agree to limit themselves to **50** requests for admissions to each party;
    D. **Plaintiff proposes 20 depositions for each side. Defendants Lee, Nellermoe, Park Christian and Defendant Kerr only agree to 16** fact depositions for each side; and
    E. **4** medical examination pursuant to Rule 35.

**(d)   Expert Discovery**

1. The Parties anticipate that they **will** require expert witnesses at trial, and propose that the Court establish the following plan for expert discovery:

    A. Plaintiff anticipates calling up to **9** experts in the areas of liability and damages.
    B. Defendants anticipate calling up to **9** experts in the areas of liability and damages.

2. The parties propose that the Court establish the following plan for expert discovery:

Disclosure of the identities of expert witnesses under Rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B) (accompanied by the written report prepared and signed by the expert witness) and the full disclosures required by Rule 26(a)(2)(C), shall be made as follows:

    A. Initial experts.

        i. The identities of any expert who may testify at trial regarding issues on which the party has the burden of persuasion must be disclosed by

   Plaintiff on or before **January 15, 2021**, and by Defendants on or before **January 29, 2021**.

  ii. Plaintiff's initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **February 5, 2021**. Defendants' initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before on or before **March 8, 2021.**

 B. Rebuttal experts.
  The identity of any experts who may testify in rebuttal to any initial expert must be disclosed and those experts' reports completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **April 12, 2021**.

3. All expert discovery, including depositions, must be completed by **May 24, 2021**.

**(e)**   **Other discovery issues**

1. Protective Order. The parties **do** intend to submit a proposed Protective Order, which substantially mirrors the form available on the District of Minnesota website. A Stipulation will be filed with the Court concurrently with this report.

2. Discovery of Electronically Stored Information. The Parties have discussed issues of preservation, disclosure, production, or discovery of electronically stored information, as required by Rule 26(f), and have agreed to submit an Electronically Stored Information ("ESI") Protocol and Proposed Order on or before April 24, 2020.

3. Claims of Privilege or Protection.

The Parties have discussed issues about claims of privilege and of protection as attorney-work product or trial preparation materials, as required by Rule 26(f), including whether the Parties agree to a procedure to assert these claims after production, or have reached other agreements under Rule 502 of the Federal Rules of Evidence. As a result of those discussions, the Parties:

 A. Request the Court to including the following agreement in the scheduling order:

 The Parties agree to follow the procedure set forth in Rule 26(b)(5)(B) regarding information produced in discovery that is subject to a claim or privilege or protection as trial-preparation materials. Pursuant to Rule 50 of the Federal Rules of Evidence, the inadvertent production of any

      documents in this proceeding shall not constitute a waiver of any privilege or protection applicable to those documents in this or any other federal or state proceeding.

    B. Request the Court include the following agreement in the scheduling order:

      Privilege logs must be provided by the producing Party within **30** days of the production from which documents were withheld.

4. The parties propose that, where appropriate, a Party request an informal telephone conference with the Court before filing any formal discovery motion. However, the parties **do not agree** that a party should be required to request an informal conference with the Court before filing a discovery motion.

**(f)**    **Proposed Motion Schedule**

**The parties propose the following deadlines for filing motions:**

1. Motions seeking to amend the pleadings or join other parties must be filed and served by **June 24, 2020**.

2. All non-dispositive motions that relate to expert discovery must be filed and served on or before **May 24, 2021**.

3. All other non-dispositive motions, including Plaintiff's motion to amend to allege punitive damages must be filed and served by **January 15, 2021.**

4. All dispositive motions be filed and served, but not heard, on or before **June 25, 2021**.

**(g)**    **Trial-Ready Date**

1. The parties agree that the case will be ready for trial on or after **October 18, 2021**. The anticipated length of the jury trial is **5 to 7** days.

2. The parties propose that the final pretrial conference be held on or before **October 1, 2021**.

**(h)**    **Insurance Carriers/Indemnitors**

Defendant Park Christian School is insured by Philadelphia Insurance and has policy limits of $1 million under its commercial general liability policy and $2 million per occurrence under its commercial umbrella policy.

Defendant Nellermoe is self-insured except insofar as he is or may be covered under Park Christian School's primary and umbrella insurance policies.

Defendant Lee is insured by Cincinnati Insurance Company and has an auto policy with limits of $500,000 per occurrence, a tenant's policy with limits of $300,000 per occurrence, and a personal umbrella policy with limits of $1 million per occurrence.

Defendant Kerr is insured by Metropolitan Property and Casualty Insurance Company and has policy limits of $250,000 per occurrence, with a $1 million personal umbrella policy. Metropolitan Property and Casualty Insurance Company is currently defending the claim under a reservation of rights.

Defendant Kerr will also be tendering the defense and indemnification of this claim as he may be covered under to Park Christian School's primary and umbrella insurance policies with Philadelphia Insurance.

**(i)** **Settlement**

1. The parties discussed settlement before the initial pretrial conference.
2. The parties propose that a settlement conference be scheduled to take place before July 15, 2020, with the proviso that the parties agree to confer by July 1, to evaluate whether discovery is sufficiently developed such that a settlement conference will be fruitful.
3. The parties have discussed whether alternative dispute resolution will be helpful to the resolution of this case and recommend the following: none at this time but the parties may decide at a later date that a mediation would be helpful.

**(j)** **Trial by Magistrate Judge**

The Parties **have not** agreed to consent to jurisdiction by the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c).

Date:   March 19, 2020

| **PARKER DANIELS KIBORT LLC** | **LILLEBERG & HOPEWELL, PLLC** |
|---|---|
| *s/Lori A. Johnson* | *s/Paul S. Hopewell* |
| Andrew D. Parker (#195042)<br>Lori A. Johnson (#311443)<br>Jordon C. Greenlee (#397478)<br>888 Colwell Building<br>123 North Third Street<br>Minneapolis, MN  55401<br>Telephone: (612) 355-4100<br>*parker@parkerdk.com*<br>*johnson@parkerdk.com* | Paul S. Hopewell (#268379)<br>Peter M. Leifeman (#0396270)<br>5200 Wilson Road, Suite 325<br>Edina, MN 55424<br>Telephone: (612) 255-1129<br>Fax: (612) 255-1139<br>*psh@lilleberg-hopewell.com*<br>*pml@lilleberg-hopewell.com* |
| **ATTORNEYS FOR PLAINTIFF** | **ATTORNEYS FOR DEFENDANT TIMOTHY KERR** |
| | **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A**. |
| | *s/Timothy J. Carrigan*<br>Paul J. Rocheford (#19539X)<br>Timothy J. Carrigan (#0338412)<br>500 Young Quinlan Building<br>81 South Ninth Street<br>Minneapolis, MN 55402-3214<br>Telephone: (612) 339-3500<br>Fax: (612) 339-7655<br>pjrocheford@ArthurChapman.com<br>tjcarrigan@ArthurChapman.com |
| | **ATTORNEYS FOR DEFENDANTS PARK CHRISTIAN SCHOOL, CHRISTOPHER NELLERMOE, AND JOSHUA LEE** |